# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9152 | **DATE** | 8/11/2003 |
| **CASE TITLE** | | Barrow vs. Walls | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Barrow's petition for writ of habeas corpus is denied. All pending motions are denied as moot.

*Amy J. St. E.*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 1 2 2003 | |
| | Notified counsel by telephone. | | date docketed | 52 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK U.S. DISTRICT COURT | date mailed notice | |
| TH✓ | courtroom deputy's initials | 03 AUG 12 AM 7:58 | | |
| | | FIL/Date/time received in central/Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

United States of America ex rel.    )
RONALD BARROW (#N-52087),    )
                         )
        Petitioner,    )
                         )
       v.    )     No. 01 C 9152
                         )
EUGENE McADORY,[1] Warden,    )
Menard Correctional Center,    )
                         )
        Respondent.    )

DOCKETED

AUG 1 2 2003

AUG 1 2 2003

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge:

      Petitioner Ronald Barrow, a prisoner in state custody, filed the present petition for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254. After a careful review of the parties' pleadings,[2]

the applicable authorities, and the record, the Court denies Barrow's habeas petition in its

entirety.

## I.    BACKGROUND

### A.    Procedural Background

      Following a trial in LaSalle County, Illinois, the jury found Barrow guilty of first degree

---

    [1]  Eugene McAdory is currently the Warden at the Menard Correctional Center and is thus the proper respondent in this habeas action. *See* Rule 2(a) of the Rules Governing Habeas Corpus Cases under 28 U.S.C. § 2254. Therefore, the Court substitutes McAdory as the respondent. *See* Fed. R. Civ. P. 25(d)(1).

    [2]  After counsel filed a reply brief to the State's answer, Barrow filed a *pro se* supplemental reply brief. Because Barrow is represented by counsel, the Court will not consider his *pro se* supplemental reply brief. *See United States v. Johnson*, 223 F.3d 665, 668 (7th Cir. 2000) (assertion of right to counsel constitutes *de facto* waiver of right to proceed *pro se*).

*52*

murder, armed robbery, residential burglary, and burglary. The jury then determined that Barrow was eligible for the death penalty and that there were no mitigating circumstances sufficient to preclude the imposition of the death penalty. The trial court sentenced Barrow to death for the murder conviction. Also, the trial court sentenced Barrow to a 30-year prison term for the armed robbery conviction and a 15-year prison term for the residential burglary conviction.

On direct appeal, the Illinois Supreme Court affirmed Barrow's convictions and sentences. After Barrow filed an amended petition for post-conviction relief under the Illinois Post-Conviction Hearing Act, the trial court dismissed the amended petition without an evidentiary hearing. The Illinois Supreme Court granted Barrow's motion for a limited remand for discovery regarding Barrow's claim that the State had given its key witness an undisclosed "deal" in return for his testimony. After discovery was conducted, the trial court dismissed the petition on remand and the Illinois Supreme Court affirmed the dismissal.

On January 11, 2003, former Illinois Governor George Ryan commuted Barrow's death sentence to natural life in prison without the possibility of parole. No challenges are pending in any court related to this commutation.

**B.     Trial Testimony**

Barrow does not challenge the statement of facts set forth in the Illinois Supreme Court's opinions affirming the judgments of the trial court. Thus, the Court presumes those facts are correct.[3] *See* 28 U.S.C. § 2254(e)(1); *Mahaffey v. Schomig*, 294 F.3d 907, 915 (7th Cir. 2002) (petitioner may rebut presumption with clear and convincing evidence). The Court, therefore,

---

[3]     Barrow challenges the post-conviction Illinois Supreme Court's characterization of facts relevant to claims the Illinois Supreme Court found to be either waived or precluded by *res judicata*. *See infra*, III. D. for a discussion of these facts.

2

adopts the underlying facts set forth by the Illinois Supreme Court in Barrow's direct and post-conviction appeals. *See People v. Barrow,* 133 Ill.2d 226 (1990) *(Barrow I)*; *People v. Barrow,* 195 Ill.2d 506 (2001) *(Barrow II).*

The State's evidence at trial established that on February 19, 1984, the body of the victim, Joseph O'Berto, was discovered in the basement of his residence in LaSalle County, Illinois, in the town of Cedar Point. The investigating officers found a spent bullet in a pool of blood next to the victim's body. The autopsy revealed that a shot to the head caused O'Berto's death.

A forensic scientist with the Illinois Department of Law Enforcement testified that he examined the bullet found near O'Berto's body and determined that it could have been fired from a gun of any one of four calibers, including a nine millimeter. A crime scene technician with the LaSalle County Police Department testified that several of the stairs leading to the victim's basement were torn up and that the basement contained three slot machines and an empty safe. He also testified that he examined the front and rear doors of the victim's residence and found no signs of forced entry.

The victim's daughter, Darlene Brown, testified that on February 18, 1984, she was with her father at his home from approximately 7:00 p.m. to 9:00 p.m. When she returned to her home after 9:00 p.m., she telephoned O'Berto to inform him that she had arrived safely. The following morning, her father-in-law called Brown and her husband and asked them to come to the victim's home. When they arrived, they found the front door unlocked, several rooms in disarray, and her father lying in the basement in a pool of blood. Brown also testified that a number of her father's possessions were missing, including his wallet, which she said typically contained about $500 in denominations of $100 bills, a bankbook reflecting approximately

3

$20,000 on deposit, and a gold money clip.

Harry Hockings, an Illinois State Trooper, testified that on March 15, 1984, Judy Herron contacted him and said that her boyfriend, Harold "Smokey" Wrona, who was incarcerated in a Maryland State prison, had information concerning the O'Berto murder. Wrona wanted to meet with Hockings. Thereafter, Hockings and the LaSalle County Sheriff met with Wrona in prison. Hockings testified that based on information Wrona provided them, they made arrangements with Maryland law enforcement officials to release Wrona from prison so that he could meet with Barrow. On April 6, 1984, Wrona and Barrow met in a Maryland hotel room that contained hidden audio and video equipment operated by Maryland law enforcement officials. After Barrow made incriminating statements, the police arrested him. Barrow was charged with the first degree murder of O'Berto, as well as armed robbery, residential burglary, and burglary.

At trial, Wrona testified that he met Barrow in July 1983 while they both were incarcerated in the Cecil County, Maryland jail. Wrona testified he told Barrow that two of his friends had committed a burglary in Cedar Point, Illinois, and had stolen $64,000 that they had found under one of the basement stairs. Wrona's friends told him that they also found three barrels of change in the basement, but just took the cash. Also, Wrona told Barrow that his friends later discovered that an additional $175,000 was hidden under one of the lower basement stairs where they had not searched.

After Barrow was released from the Maryland jail on bond pending an appeal of a Maryland conviction for armed robbery, he visited Wrona who remained incarcerated. Barrow told Wrona that he was going to Davenport, Iowa, because he had a "score" there and that he also wanted to visit Wrona's son in Illinois on the way. Barrow then inquired about the robbery in

4

Cedar Point, Illinois, that Wrona previously had mentioned. Barrow asked for directions to Cedar Point and inquired whether Wrona knew what the specific house looked like.

Wrona further testified that Barrow subsequently visited him in prison, and told him that he had made "a pretty good score" in Cedar Point. Barrow told Wrona that he and his brother, Bruce, had watched the victim's home for approximately one week. Late one night, Barrow knocked on the front door and told O'Berto that he was having car trouble and asked to use the telephone. Barrow then stuck his foot in the door, pushed O'Berto back into the house with a gun, and handcuffed him.

Barrow told Wrona that he found a wallet in the victim's pocket with five $100 bills and that he searched the house and found a bankbook with $18,000 on deposit. Also, Barrow told Wrona that he found an empty safe and three slot machines in the victim's basement. Barrow stated that he and his brother "tore a couple stairs up" in the basement, but did not find anything. Barrow also explained that he asked the victim where he would find more money, but O'Berto could not hear, so Barrow "whipped him." While pointing a finger to his head, Barrow told Wrona that he "had to take him out of it." Barrow stated that he and his brother wore gloves the entire time they were in the house and that he disposed of the gun in a river in Indiana prior to an Indiana State Trooper stopping him for speeding.

In addition, the State played for the jury the recorded conversation with Wrona when he met with Barrow in the Maryland hotel room, and the court entered a transcript of the recording into evidence. The tape and transcript corroborated other trial testimony, including Barrow's statements that he watched the victim's home for a week. The tape also revealed that one evening after midnight Barrow forced his way in O'Berto's house, Barrow hit O'Berto, and

5

O'Berto would only tell Barrow where he kept change. It showed that Barrow searched the house and found only an empty safe in the basement. Barrow then pulled up the first two stairs leading to the basement, and Barrow used a nine millimeter gun to shoot O'Berto.

## II.    LEGAL STANDARDS

### A.    Habeas Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor,* 529 U.S. 362, 404-05 (2000). In *Williams,* the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *See id.* at 405.

With respect to the "unreasonable application" prong under Section 2254(d)(1), a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407. A state court's application of Supreme Court precedent is unreasonable if the court's decision was "objectively" unreasonable. *See Lockyer v. Andrade,* 123 S.Ct. 1166, 1174 (2003) (unreasonable application more than incorrect or erroneous). In order to be considered unreasonable under this standard, a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *See Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Searcy v. Jaimet,*

6

332 F.3d 1081, 1089 (7th Cir. 2003) (decision need not be well reasoned or fully reasoned and is

reasonable if one of several equally plausible outcomes); *Schultz v. Page,* 313 F.3d 1010, 1015

(7th Cir. 2002) (reasonable state court decision must be minimally consistent with facts and

circumstances of the case).

### B. Procedural Default

Before proceeding to the merits of Barrow's habeas claims, the Court must determine

whether Barrow has procedurally defaulted any of his claims. A petitioner's failure to present a

constitutional claim to the highest state court to which he may appeal it in the manner required by

state law results in a procedural default preventing a federal court from deciding the claim on

collateral review. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999) (petitioner must

give state court full and fair opportunity to resolve federal constitutional claims before federal

habeas court can review them). Procedural default also occurs where the state court rejects a

petitioner's claim based on an independent and adequate state procedural ground. *See Harris v.

Reed,* 489 U.S. 255, 263 (1989) (federal courts cannot review questions of federal law if state

court decision rests on a state procedural ground that is independent of the federal question and

adequate to support the judgment); *Lee v. Davis,* 328 F.3d 896, 899-900 (7th Cir. 2003) (same).

Under Illinois law, waiver is an independent and adequate state court ground. *Wright v. Walls,*

288 F.3d 937, 947 (7th Cir. 2002).

A federal court may not grant relief on a procedurally defaulted claim unless the habeas

petitioner can establish cause for the default and actual prejudice as a result of the alleged

violation of federal law. *See Coleman v. Thompson,* 501 U.S. 722, 750 (1991). The Court may

also reach the merits of a defaulted habeas claim if the petitioner can demonstrate that the court's

7

failure to consider the claim will result in a fundamental miscarriage of justice. *Id.*

## C.    Actual Innocence And Procedural Default

Barrow filed a supplement to his petition claiming that he is actually innocent of the crimes for which he was convicted, and thus was denied his constitutional right to due process and equal protection and his rights guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments. In essence, Barrow claims that he has new evidence to support a *prima facie* case of actual innocence. Although claims of actual innocence are recognized as freestanding claims in Illinois pursuant to the Illinois Constitution, *see People v. Washington,* 171 Ill.2d 475, 489 (1996), claims of actual innocence are not cognizable on federal habeas review. *See Herrera v. Collins,* 506 U.S. 390, 400 (1993).

A claim of actual innocence or the "fundamental miscarriage of justice exception," however, can be a gateway for federal habeas courts to review procedurally defaulted claims. *See id.* at 404 (actual innocence claim "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits"). A fundamental miscarriage of justice occurs only in extraordinary cases where a constitutional violation probably resulted in the conviction of a defendant who is actually innocent. *See Murray v. Carrier,* 477 U.S. 478, 495-96 (1986). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo,* 513 U.S. 298, 327 (1995); *see also Bell v. Pierson,* 267 F.3d 544, 551 (7th Cir. 2001).

Accordingly, even though Barrow's freestanding claim of actual innocence is not cognizable on habeas review, the Court will review it as a possible gateway to reach the merits of

8

his procedurally defaulted claims.

Barrow claims that he has new evidence consisting of two witnesses – David Lee and Cheri Stevenson – who would testify that the State's key witness, Harold "Smokey" Wrona, lied while testifying at trial and that Wrona actually "set up" Barrow for a crime that he did not commit. Barrow contends that he obtained David Lee Stevenson's affidavit in late 1994. At that time, Stevenson was incarcerated at Dixon Correctional Center in Dixon, Illinois. In his affidavit, David Lee Stevenson stated that when he met with Wrona in April 1988, Wrona stated that he lied at Barrow's trial in order to get released from prison. According to Stevenson, Wrona stated that his old school friend had committed the O'Berto murder. Wrona asserted that he could not tell on his old friend, so he accused Barrow instead.

Barrow next contends that he obtained the affidavit of Cheri Stevenson, the former wife of David Lee Stevenson, in September 1995. Apparently, Cheri was also present during the 1988 meeting with Wrona and fully corroborated the facts attested to by David Lee in his affidavit. According to Cheri, Wrona stated that his only motivation for fabricating the story about Barrow's involvement in the murder was to be released from prison.

Also, Barrow contends that had he taken the witness stand, he would have presented his actual innocence claim and provided a specific explanation for why he was near the victim's home on the night of the murder. Barrow asserts that he would have testified to the inconsistencies in the audio tape of his conversation with Wrona where he explained his commission of the crime. Finally, Barrow claims that because his trial counsel never inquired into Wrona's pending criminal charges that were allegedly dismissed in the exchange for his trial testimony against Barrow, the Court should consider this evidence when evaluating his actual

9

innocence claim.

The Illinois Supreme Court reviewed Barrow's argument on post-conviction appeal, and concluded that "the Stevensons' affidavits are not of such conclusive character that the testimony would likely change the result of the defendant's trial." *See Barrow II*, 195 Ill.2d at 540. The court based this conclusion on the overwhelming trial evidence of Barrow's guilt. *See id.*

Although the Court is not bound by the Illinois Supreme Court's decision under these circumstances, the Illinois court's analysis and conclusion are compelling. The Court concurs with its reasoning. Barrow has presented two affidavits averring that Wrona lied which the Court must weigh against the overwhelming evidence of Barrow's guilt, including recorded statements made to Wrona in which Barrow confessed to the murder and identification witnesses placing him near the scene of the crime. *See Barrow II,* 195 Ill.2d at 523-24, 532-33 (detailing evidence of Barrow's guilt). For example, there was considerable trial testimony placing Barrow and his brother near the scene and time of the murder, including the testimony of Wrona's girlfriend, an Illinois State Police Officer, and a restaurant employee. In addition, subsequent to Barrow's arrest, law enforcement searched his home pursuant to a warrant and uncovered evidence indicative of Barrow's guilt, including shoes matching the sole patterns found in the victim's residence and indicia of Barrow renting a car and driving from Maryland to Illinois.

Barrow's claim that he would have taken the stand to testify about his actual innocence to explain his whereabouts the night of the murder and clarify the inconsistencies in the audio tape is not only speculative in nature, but it is not credible. *See Bell,* 267 F.3d at 552 (because district court considers the credibility of petitioner's evidence under *Schlup*, court must make factual findings). Finally, Barrow's claim based on his counsel's deficient performance regarding

10

Wrona's pending charges relates to his ineffective assistance of trial counsel and *Brady* claims, both of which lack merit as discussed below.

Reviewing Barrow's new evidence in light of all of the evidence presented at trial, *see Schlup*, 513 U.S. at 328, Barrow has not met the threshold requirement that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *See id.* at 329 (standard requires district court to make probabilistic decision about what reasonable, properly instructed jurors would do). Because Barrow has not made a colorable claim of actual innocence, this claim cannot act as a gateway to a merits determination of his procedurally defaulted claims. *See Herrera*, 506 U.S. at 404.

## III.  MOOT SENTENCING CLAIMS

On January 11, 2003, former Illinois Governor George Ryan commuted Barrow's death sentence to natural life in prison without the possibility of parole. Since Barrow's commutation, the Illinois Supreme Court has issued modified decisions on denial of rehearing in other capital cases. In each case, the Illinois Supreme Court concluded that former Governor Ryan's commutation of the defendant's death sentence rendered moot any capital sentencing claims. *See, e.g., People v. Lucas*, 203 Ill.2d 410 (2003) (commutation removes judicially imposed sentence replacing it with a lesser, executively imposed sentence); *People v. Miller*, 203 Ill.2d 433 (2003) (same). In a denial of an application for a certificate of appealability pursuant to 28 U.S.C. § 2253(c), the United States Court of Appeals for the Seventh Circuit concluded that due to the commutation of a former death row inmate's sentence, the prisoner's habeas claims based on his death sentence were moot. *See Wilson v. Mote*, No. 03-1943, slip op. at 1 (7th Cir. Jun. 18, 2003).

11

Accordingly, Barrow's habeas claims challenging his death sentence are moot. These claims include: (1) ineffective assistance of counsel during the capital sentencing hearing; (2) violation of Barrow's right to full and fair review of his death sentence on appeal; (3) violation of Barrow's right to a fair capital sentencing hearing before an impartial tribunal; and (4) prosecutorial misconduct based on remarks made at sentencing.

## IV. BARROW'S REMAINING NONCAPITAL HABEAS CLAIMS

### A. Denial Of Right To Present A Defense

Barrow claims that he was denied his Sixth and Fourteenth Amendment rights to present a defense, including testifying on his own behalf, based on his trial counsel's ineffective assistance of counsel. Barrow contends that although the Illinois Supreme Court addressed this claim as an ineffective assistance of counsel claim, it failed to address whether he was denied his constitutional right to present a defense and testify on his own behalf as an independent claim.

In order to reach the merits of this claim, the Court must first examine whether Barrow made a full and fair presentment of this claim to the Illinois courts, thereby, preserving the claim for collateral review. *See Boerckel*, 526 U.S. at 844. A full and fair presentment requires that a petitioner present both the operative facts and controlling legal principles of a constitutional claim to the state court. *See Chambers v. McCaughtry*, 264 F.3d 732, 737-38 (7th Cir. 2001) (mere reference to constitutional issue not sufficient). Factors relevant to whether a habeas petitioner has fairly presented a constitutional claim to the state court include whether petitioner's state court argument: (1) relied on federal cases engaging in a constitutional analysis; (2) relied on state cases applying a constitutional analysis to similar facts; (3) asserted a claim in particular terms calling to mind a specific constitutional right; or (4) alleged a pattern of

facts well within the mainstream of constitutional litigation. *See Verdin v. O'Leary*, 972 F.2d 1467, 1473-74 (7th Cir. 1992). The presence of any of the above factors does not automatically avoid procedural default because the Court must carefully consider the specific facts of each case. *See Bocian v. Godinez*, 101 F.3d 465, 469 (7th Cir. 1996).

On direct appeal to the Illinois Supreme Court, Barrow explicitly presented his constitutional right to present a defense claim basing his argument on United States Supreme Court precedent. In his brief to the Illinois Supreme Court, Barrow argued that because counsel persuaded him not to present a defense based on erroneous legal advice, he was denied his constitutional right to present a defense. Barrow asserted that he had other witnesses to call and that he wanted to testify himself to explain the taped conversation he had with Wrona. Barrow set forth facts supporting his counsel's alleged erroneous advice as the basis of his decision not to present a defense and cited United States Supreme Court authority in support of this constitutional claim. *See, e.g., Washington v. Texas*, 388 U.S. 14, 19 (1967) (Sixth Amendment guarantees criminal defendant right to establish a defense). In sum, Barrow fully and fairly presented this constitutional claim to the Illinois Supreme Court by presenting both the operative facts and controlling legal principles. *See Chambers*, 264 F.3d at 737-38.

Because Barrow correctly contends that the Illinois Supreme Court failed to consider his right to present a defense claim as an independent claim, the Court reviews his claim under the general standard set forth in 28 U.S.C. § 2243, not under Section 2254(d)(1). *See Braun v. Powell*, 227 F.3d 908, 917 (7th Cir. 2000). The standard under Section 2243 requires this Court to "dispose of the matter as law and justice require." *Id.*

The right of a defendant to present evidence is grounded in the Sixth Amendment. *See*

*Taylor v. Illinois*, 484 U.S. 400, 409 (1988). "Just as the accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, the accused also has a right to present his or her own witnesses to establish a defense." *Washington,* 388 U.S. at 19. A criminal defendant's right to testify is an aspect of his right to defend himself arising out of the Sixth Amendment's guarantee of compulsory process. *See Rock v. Arkansas,* 483 U.S. 44, 49 (1987). A violation of a defendant's right to present a defense occurs when the court denies him the opportunity to present testimony that would have been material, relevant, and favorable to his defense. *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) (defendant must make some plausible showing of testimony's materiality, relevancy, and that it is vital to his defense).

First, Barrow has not argued that the Illinois trial court excluded evidence that he wished to present. Instead, he claims that his attorney's advice hindered him from presenting a defense. The focal point of a criminal defendant's right to present a defense is whether the evidentiary and procedural rules allowing state and federal courts to exclude evidence from criminal trials are arbitrary or disproportionate to the purposes they are designed to serve. *See United States v. Scheffer,* 523 U.S. 303, 308 (1998) (citing *Rock*, 483 U.S. at 56). Simply put, the constitutional inquiry involves the court's exclusion of evidence, not Barrow's decision whether or not to present a defense. *See Rock,* 483U.S. at 56 n.11 ("Numerous state procedural and evidentiary rules control the presentation of evidence and do not offend the defendant's right to testify").

Second, Barrow did not make a plausible showing that his testimony, along with the testimony of other witnesses, was favorable to his defense, material, and relevant. *See Valenzuela-Bernal*, 458 U.S. at 867. In his habeas petition, Barrow argues that his brother's

14

testimony would have exonerated him, yet Barrow's attorney testified at the hearing on Barrow's post-trial motion that Barrow's brother appeared to be "burnt out" on drugs and his testimony was not believable. *See Barrow II*, 133 Ill.2d at 248. Barrow's attorney also testified that he believed the evidence that Barrow could present would not "sway even one juror's mind." *See id.* Therefore, any such testimony would not have been favorable to Barrow's defense.

Also, Barrow contends that he was denied his right to testify on his own behalf. Barrow asserts that after the trial court denied the motion for a directed verdict, his counsel advised him not to testify in order to preserve for appeal the motion for a directed verdict. While examining Barrow's ineffective assistance of trial counsel claim, the Illinois Supreme Court concluded that "counsel did not advise the defendant to forgo presenting evidence or testimony solely to preserve for review argument on the denial of the motion for a directed verdict. Rather, the record reflects a strategic decision on the part of defense counsel not to put on evidence that might have had little or no effect on the jury or that may have been harmful." *See id.*

Barrow does not argue that the trial court or his attorney forbade him from testifying on his own behalf. Rather, he contends that counsel advised him not to take the stand. Barrow's only argument is that his testimony would have established that he was not at the victim's home on the night of the murder. Curiously, Barrow does not present his state court argument that his testimony would explain his taped conversation with Wrona. Nevertheless, based on Barrow's assertion that he would serve as his own alibi witness, Barrow has failed to make a plausible showing that his testimony would be favorable to his defense, material, and relevant. *See Valenzuela-Bernal*, 458 U.S. at 867. Therefore, under the general standard as set forth in 28 U.S.C. § 2243, Barrow's claim based on his constitutional right to present a defense is without

merit.[4]

## B.    Removal Of Co-Counsel

Barrow claims that he was denied his Sixth Amendment right to counsel because the trial court improperly removed his co-defense counsel, Daniel Bute, even though Barrow had waived Bute's conflict of interest.

The background facts to Barrow's Sixth Amendment claim are set forth in detail in the Illinois Supreme Court's recitation of facts in *Barrow I,* 133 Ill.2d at 250-51. The trial court appointed Wayne McFarland, the public defender of Grundy County, as Barrow's attorney because the public defender of LaSalle County represented Barrow's brother in the same matter. McFarland filed a motion for the appointment of a special assistant defense attorney which the court granted. The trial court then appointed Daniel Bute, an assistant LaSalle County public defender, as a special assistant to McFarland.

The State then filed a motion to remove Bute on the ground that a conflict of interest existed in his representation of Barrow. The State argued that Bute represented the sheriff of LaSalle County in various civil matters and that Bute's law partner had previously represented the victim's son in a real estate transaction and the prosecution's witness, Illinois State Trooper Hockings, in a divorce proceeding. At the hearing on the State's motion, the trial court informed Barrow of the possible conflict posed by Bute's representation, and Barrow stated that he was willing to waive his right to any conflict. The trial court concluded that Barrow's waiver was voluntary, knowing, and intelligent and denied the State's motion.

---

[4] Barrow's ineffective assistance of counsel claim based on counsel's advice not to present a defense is discussed *infra,* IV. M.

A week prior to the scheduled commencement of trial, Barrow filed a motion to permit McFarland to withdraw as counsel and to substitute Bute as counsel of record. In support of this motion, McFarland stated that he had recently resigned as Grundy County public defender and that the trial would conflict with family matters. The trial court denied the motion because it was raised on the eve of trial. The trial court reasoned that it had only appointed Bute to relieve McFarland of the trips to LaSalle County for trial preparation, not to participate at trial. Shortly thereafter, Barrow filed a motion to continue Bute's representation throughout his trial which the court denied.

The Illinois Supreme Court correctly noted that the Sixth Amendment guarantees a criminal defendant the right to counsel, but not the right to select his counsel of choice. *See Barrow I,* 133 Ill.2d at 251; *see also Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 624 (1989) (Sixth Amendment guarantees criminal defendants right to adequate representation, "but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts"); *United States v. Oreye,* 263 F.3d 669, 671 (7th Cir. 2001) (criminal defendant has right to competent counsel but not right to choice of appointed counsel). The Illinois Supreme Court then concluded that the trial court did not abuse its discretion in denying Barrow's motion to substitute counsel based on the factual record and Barrow's failure to offer persuasive reasons for substituting counsel. *See id.* The Illinois Supreme Court also examined Barrow's waiver of his right to conflict-free counsel, concluding that under *Wheat v. United States,* 486 U.S. 153 (1988), the trial court was not required to accept Barrow's waiver. *See id.* at 163 (trial court allowed substantial latitude in refusing waiver of conflict of interest).

17

Although Barrow contends that the Illinois Supreme Court's decision was "contrary to" clearly established Supreme Court precedent, he does not argue that he has a constitutional right to his choice of counsel under the Sixth Amendment. Barrow further concedes that the trial court had the authority to refuse his waiver under *Wheat*. Barrow contends, however, that under *Wheat*, courts can refuse a defendant's waiver only after recognizing the presumption in favor of the defendant's choice of counsel and finding an actual conflict or serious potential for conflict.

In *Wheat*, the Supreme Court held that "[t]he District Court must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." *Id.* at 164. Despite Barrow's argument, the Illinois Supreme Court unequivocally followed this precedent. After reviewing the factual background and Bute's role in Barrow's case, the Illinois Supreme Court concluded that a potential conflict of interest did exist and that the trial court did not err in denying Barrow's motion for a substitution of counsel. *See Barrow I*, 133 Ill.2d at 254. Hence, Barrow's argument that the Illinois Supreme Court's decision was "contrary to" *Wheat* is without merit.

In making his argument that the Illinois Supreme Court's decision was an "unreasonable application" of clearly established Supreme Court precedent, Barrow contends that the Illinois court's rationale had no basis in the record. Barrow argues, for example, that the Illinois Supreme Court's conclusion that substituting Bute would delay the trial ignored the fact that Bute stated there would be no delay. Barrow makes no attempt, however, to support his characterization with clear and convincing evidence to rebut the Illinois Supreme Court's factual

conclusions as required under Section 2254(e)(1).  *See Mahaffey*, 294 F.3d at 915.

Also, Barrow contends that the Illinois Supreme Court somehow erred in its reasoning because the trial court had accepted Barrow's waiver when it appointed Bute as a special assistant defense attorney in this first instance.  The Illinois Supreme Court addressed this issue by explaining that although Barrow waived his right to conflict-free counsel early in the proceedings, the trial court appointed Bute only to assist in the trial preparation occurring months before Barrow's motion to substitute Bute as counsel of record for trial.  *See Barrow I*, 133 Ill.2d at 250, 254.  Based on this analysis, the Illinois Supreme Court's decision was not "well outside the boundaries of permissible differences of opinion", and thus, an unreasonable application of Supreme Court precedent.  *See Hardaway v. Young*, 302 F.3d at 762.  Accordingly, the Court denies Barrow's removal of counsel claim.

### C.    Denial Of Right To A Public Trial

Barrow claims that after the trial court removed Bute from his case, it precluded Bute from appearing in the courtroom during his trial.  Consequently, Barrow argues that he was denied his constitutional right to a public trial.

The post-conviction Illinois Supreme Court stated:  "We believe that the present contention simply rephrases one that this court considered and rejected on direct appeal:  that the defendant was denied his right to effective assistance of counsel by the trial court's denial of his pretrial motion for substitution of counsel."  *Barrow II*, 195 Ill.2d at 526.  The Illinois court concluded that the doctrine of *res judicata* barred Barrow from raising this claim in his post-conviction petition, and therefore, did not address the merits of the claim.  *See id.*

Barrow contends that the Court should review this claim under the miscarriage of justice

19

exception to procedural default. What Barrow fails to recognize, however, is that he has not defaulted this claim. Under Illinois law, issues that were previously raised on direct appeal are *res judicata* and claims that could have been raised but were not are waived. *See People v. Miller*, 203 Ill.2d 433, 437 (2002). Unlike waiver, federal habeas courts may examine claims barred by *res judicata* because this doctrine is not a procedural forfeiture. *See Moore v. Bryant*, 295 F.3d 771, 776 n.1 (7th Cir. 2002); *Patrasso v. Nelson*, 121 F.3d 297, 301-02 (7th Cir. 1997); *see also Porter v. Gramley*, 112 F.3d 1308, 1316 (7th Cir. 1997) (*res judicata* simply means state courts have already resolved matter and want nothing more to do with it). Because the Illinois Supreme Court did not consider this claim waived but barred by *res judicata*, the Court will collaterally review Barrow's public trial claim. *See Patrasso*, 121 F.3d at 302.

As Barrow correctly asserts, the Sixth Amendment guarantees criminal defendants the right to a public trial, *see Waller v. Georgia*, 467 U.S. 39, 45 (1984), which in some instances may include the exclusion of just one person. *See Braun*, 227 F.3d at 920 ("We caution that the exclusion of any spectator runs the risk of violating the Sixth Amendment"). Barrow, however, has not presented a sufficient record to establish that Bute was excluded from the courtroom in the first instance. Based on Bute's post-conviction affidavit, Barrow states that after Bute was removed as counsel, "he was told that he was not to be allowed in the courtroom." Barrow admits, however, that no proceedings took place on this point in the record. Barrow simply asserts that had Bute not been excluded, he would have attended the trial. In addition, Barrow has not requested any discovery based on this claim to support his petition for writ of habeas corpus, nor has he requested an evidentiary hearing under Section 2254(e)(2) to supplement the factual basis of this claim. Because Barrow has failed to present an adequate factual basis to

support his public trial claim, this habeas claim fails as well.

### D.   Denial Of Full And Fair Review Of Conviction

Barrow contends that he was denied a full and fair review of his conviction on appeal because the Illinois Supreme Court, on both direct and post-conviction appeal, concluded that six of his nine constitutional claims were barred by either waiver or *res judicata*. Barrow, however, fails to identify these six constitutional claims.

In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254(a). Therefore, federal habeas courts must defer to a state court's decisions based on questions of state law. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Under Illinois law, waiver and *res judicata* constitute procedural bars to a defendant's right to prevail on a claim. *People v. Blair*, 338 Ill.App.3d 429, 431-32 (2003). Accordingly, the Illinois court's application of its own procedural law is not subject to collateral review because the Illinois court was applying its own state, not constitutional law. *See Coleman v. O'Leary,* 845 F.2d 696, 700 (7th Cir. 1988) ("question of whether state court properly applied its state procedural rules is a matter of state law, and may not, as a matter of comity and federalism, be reviewed by a federal court in a habeas case"). In sum, because this claim is not based on a federal constitutional issue, but on Illinois procedural law, the Court cannot review this claim as set forth in Barrow's habeas petition.

Barrow, nevertheless, argues that the post-conviction Illinois Supreme Court perpetuated factual inaccuracies when making its procedural rulings. Barrow claims, for example, that he

21

was merely bragging during his recorded conversation with Wrona, and that he did not murder O'Berto. Barrow, however, does not support his factual characterizations with clear and convincing evidence to rebut the Illinois Supreme Court's factual statements. *See* § 2254(e)(1); *Mahaffey*, 294 F.3d at 915. Accordingly, this argument cannot support Barrow's full and fair review claim.

### E.  Brady Claim

Barrow next claims that the prosecution failed to disclose material evidence pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Specifically, Barrow contends that the State ignored repeated discovery requests concerning prosecution witness Wrona, including requests for his criminal record and any evidence of deals negotiated in return for his testimony. Barrow claims that this evidence would have undermined Wrona's credibility as a witness. *See Giglio v. United States*, 405 U.S. 150, 154-55 (1972) (extending *Brady* framework to include impeachment evidence).

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution." *Brady*, 373 U.S. at 87. Accordingly, in order to establish a *Brady* violation, Barrow must show that: (1) the State suppressed evidence; (2) the evidence was favorable to his defense; and (3) the evidence was material to a trial issue. *See United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002); *see also Strickler v. Greene*, 527 U.S. 263, 281-82 (1999) (prosecution suppressed evidence, evidence favorable to accused, and prejudice ensued). Evidence is "material" under the *Brady* framework if there is a reasonable probability that, had the evidence been disclosed, the result of

22

the trial would have been different. *See Strickler,* 527 U.S. at 280.

In its post-conviction decision, the Illinois Supreme Court concluded that the evidence at issue was not constitutionally material under the *Brady* framework. The Illinois Supreme Court reviewed Barrow's arguments that the State violated *Brady* by failing to provide information regarding Wrona's criminal record. It addressed Barrow's pretrial requests for Wrona's criminal record. It also acknowledged Barrow's requests for this information during trial where the prosecutor replied that he had "no control over the FBI" and had not obtained Wrona's FBI rap sheet. In addition, the Illinois court reviewed a purported copy of Wrona's FBI "rap sheet" submitted by Barrow as well as an alleged summary of Wrona's criminal history revealing that Wrona had numerous burglary and theft convictions.

Barrow also argued that the State failed to turn over the reports of any police interviews with Wrona pertaining to Barrow's case and any discovery regarding telephone conversations between Wrona and his girlfriend, Judy Herron. The Illinois court noted that Barrow failed to attached any of this purported *Brady* material to his post-conviction petition. The Illinois Supreme Court then held that:

> The defendant contends that the State violated *Brady* by failing to disclose to the defense all the evidence described above, and that a new trial is therefore warranted. We find no basis for a new trial on this claim. Assuming, without deciding, that the evidence exists, the prosecution's failure to disclose it would not warrant a new trial, under the circumstances present here. The suppressed evidence must be material if it is to establish a *Brady* violation. In this context, evidence will be deemed material only if there exists a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed to the defense. *People v. Hobley,* 182 Ill.2d 404, 432, 231 Ill.Dec. 321, 696 N.E.2d 313 (1998). As discussed above, the evidence of defendant's guilt was overwhelming. In light of the overwhelming evidence of guilt in this case, we conclude that there is no reasonable probability that, even if all the allegedly suppressed evidence had been disclosed to the defense, the result of the defendant's trial would have been different.

23

*Barrow II*, 195 Ill.2d at 537.

The Illinois Supreme Court's decision was consistent with the facts and circumstances of

the case, and therefore, a reasonable application of *Brady*. *See Schultz*, 313 F.3d at 1015. In its

decision, the Illinois court correctly identified the controlling legal principles under *Brady*. *See,*

*e.g.*, *People v. Hobley*, 182 Ill.2d 404, 432 (1998) (favorable evidence material under *Brady* if

there is reasonable probability that, had the suppressed evidence been disclosed, proceeding's

result would have been different). The Illinois court concluded that based on the overwhelming

evidence supporting Barrow's conviction, the alleged *Brady* evidence was not material because

there was no reasonable probability that the result of Barrow's trial would have be different. *See*

*Barrow II*, 195 Ill.2d at 536-37. This reasoning is one of several plausible outcomes. *See*

*Searcy*, 332 F.3d at 1089.

Barrow, however, argues that if the jury had heard Wrona's complete criminal history and

the specifics of Wrona's alleged deal with the State, the jury would have accorded Wrona far less

credibility. Barrow's argument that this information would have discredited Wrona does not

automatically make this alleged *Brady* evidence material. *See United States v. Agurs*, 427 U.S.

97, 109-110 (1976) (mere possibility that undisclosed evidence may assist defense does not

establish materiality in the constitutional sense). Instead, Barrow must establish that had this

evidence been disclosed to the jury, the result of his trial would have been different. *See*

*Strickler*, 527 U.S. at 280.

Furthermore, Barrow relies on *Boss v. Pierce*, 263 F.3d 734 (7th Cir. 2001) to argue that

the Illinois Supreme Court erred by not carefully discussing each alleged *Brady* item. In *Boss*,

the Seventh Circuit inquired whether the Illinois Appellate Court had reasonably applied *Brady* when evaluating whether the defendant exercised reasonable diligence in accessing information from a defense witness. *See id.* at 740 (evidence is "suppressed" under *Brady* if prosecution fails to disclose it and evidence not otherwise available to defendant through exercise of reasonable diligence). Whether Barrow exercised reasonable diligence is not at issue here. Further, the *Boss* decision does not support Barrow's argument that the Illinois Supreme Court's unreasonably applied *Brady* because the court did not carefully discuss each item of evidence.

Finally, Barrow argues that the Illinois Supreme Court failed to sufficiently explain the overwhelming evidence supporting Barrow's conviction, and thus, the Illinois court unreasonably applied *Brady*. This argument is disingenuous because the Illinois Supreme Court discussed the overwhelming evidence of Barrow's guilt in detail throughout its decision. *See, e.g., Barrow II,* 195 Ill.2d at 523-24, 532-33. Therefore, the Court denies Barrow's *Brady* claim.

### F. Prosecution Suborned Perjured Testimony

Barrow next argues that Wrona committed perjury and that the State knew of his false testimony. Barrow contends that Wrona lied when he testified that he only had two prior criminal convictions and also when he denied that he had a deal with the State to testify against Barrow. Further, Barrow argues that the prosecution solicited or did not correct this false testimony.

A criminal conviction obtained by the knowing use of perjured testimony is fundamentally unfair if there is a reasonable likelihood that the false testimony could have impacted the jury's judgment. *See United States v. Bagley*, 473 U.S. 667, 678-79 (1985); *see also Tayborn v. Scott*, 251 F.3d 1125, 1130 (7th Cir. 2001) (introduction of perjured testimony,

without more, not violation of constitutional right warranting federal habeas relief). In order to establish a due process violation, a habeas petitioner seeking a new trial on the ground that the prosecutor used perjured testimony must establish that: (1) the prosecution presented perjured testimony; (2) the prosecution knew or should have known of the perjured testimony; and (3) there is a reasonable likelihood that the perjured testimony impacted the verdict. *See Harding v. Walls*, 300 F.3d 824, 828 (7th Cir. 2002).

In addressing Barrow's claim that the State suborned perjury regarding Wrona's alleged deal with the prosecution, the Illinois Supreme Court examined, in detail, the overwhelming evidence of Barrow's guilt including Barrow's own incriminating statements as to his role in the offenses. *See Barrow II,* 195 Ill.2d at 532-33. The Illinois Supreme Court concluded that assuming that any such deal existed and that the State failed to disclose it, there was no reasonable likelihood that this false testimony could have affected the jury's verdict. *See id.* at 532 (citing *People v. Olinger*, 176 Ill. 2d 326, 345 (1997) (adopting *Bagley* framework)). This analysis is an objectively reasonable application of *Bagley* because it is consistent with the facts and circumstances of this case. *See Schultz*, 313 F.3d at 1015.

Barrow also fails to demonstrate, as he must, why the Illinois Supreme Court's decision was an unreasonable application of *Bagley. See Woodford v. Visciotti,* 537 U.S. 19, 24-25 (2002) (per curiam) (petitioner has burden in establishing state court applied facts of case in an objectively unreasonable manner); *see also Warren v. Richland Cty. Cir. Ct.*, 223 F.3d 454, 456-57 (7th Cir. 2000) (habeas petitioner must demonstrate state court decision was unreasonable given the evidence presented during state court proceedings). Therefore, the Court denies Barrow's claim based on Wrona's deal with the prosecution and the alleged perjury pertaining to

it.

Next, Barrow argues that the Illinois Supreme Court refused to address Wrona's failure to testify accurately about his criminal record and the prosecution's failure to correct this testimony. In order to entertain this argument, Barrow had to fully and fairly present it to the Illinois courts. A full and fair presentment requires that Barrow present both the operative facts and controlling legal principles to the Illinois courts. *See Chambers,* 264 F.3d at 738. As discussed above, factors the Court considers in determining whether a habeas petitioner has fully and fairly presented his constitutional claim to the Illinois courts include whether petitioner's state court argument: (1) relied on federal cases engaging in a constitutional analysis; (2) relied on state cases applying a constitutional analysis to similar facts; (3) asserted a claim in particular terms calling to mind a specific constitutional right; or (4) alleged a pattern of facts well within the mainstream of constitutional litigation. *See Verdin v. O'Leary,* 972 F.2d 1467, 1473-74 (7th Cir. 1992).

Here, Barrow failed to fully present the claim that Wrona committed perjury based on his criminal background to the Illinois courts. More specifically, Barrow did not present operative facts or constitutional authority or analysis in support of his claim, including facts to establish that the prosecution presented such perjured testimony and the prosecution knew or should have known of the perjured testimony. *See Bagley,* 473 U.S. at 678-79. In addition, he did not present any analysis to establish that there was a reasonable likelihood that the perjured testimony impacted the guilty verdict. *See id.* Due to Barrow's failure to present this argument to the Illinois courts, Barrow's claim is procedurally defaulted. *See Boerckel,* 526 U.S. at 845. Because Barrow does not offer any reason for this procedural default, except for his failed actual

27

innocence claim, the Court is barred from collaterally reviewing this claim. *See Coleman,* 501 U.S. at 750.

### G.    Other Crimes And Irrelevant Evidence

Barrow contends that the trial court violated his due process rights when it admitted into evidence other crimes and irrelevant, unreliable, or improper evidence. Specifically, Barrow argues that the jury repeatedly heard improper references to other crimes he had committed. Barrow further argues that the prosecution improperly presented a series of cartoons depicting acts of violence towards Wrona that had been sent by Barrow to his brother while both were in custody for the O'Berto murder. Finally, Barrow claims that the unredacted taped conversation he had with Wrona was irrelevant, and thus inadmissible.

In general, questions of state evidentiary rulings are not subject to collateral review in habeas corpus proceedings. *See Dressler v. McCaughtry,* 238 F.3d 908, 914 (7th Cir. 2001). The Court may only review a state court's evidentiary ruling if it is erroneous and of constitutional magnitude. Specifically, the state court's ruling must be so prejudicial that it compromised the petitioner's due process rights to a fundamentally fair trial thereby creating the likelihood that an innocent person was convicted. *See id.*

Barrow does not explain how the other crimes and irrelevant evidence was so prejudicial that his due process rights to a fundamentally fair trial were compromised, let alone that the alleged errors created the likelihood that an innocent person was convicted. *See id.* Instead, Barrow argues that it is axiomatic that all evidence admitted at trial be relevant and that, under Illinois law, other crimes evidence must show either modus operandi, presence, identity, motive, or intent. Barrow's arguments relating to the Illinois court's evidentiary rulings, without more,

do not comprise constitutional claims cognizable on habeas review.

Further, Barrow argues that the Illinois Supreme Court's decision was unreasonable because it did not meet the requirements of *United States v. Shackleford,* 738 F.2d 776 (7th Cir. 1984), *as modified by Huddleston v. United States,* 485 U.S. 681 (1988). The AEDPA, however, requires federal habeas courts to analyze whether state courts reasonably applied United States Supreme Court precedent regarding constitutional issues, not procedural law as discussed by a federal appeals court. *See* § 2254(d)(1); *see also Young v. Walls,* 311 F.3d 846, 849 (7th Cir. 2002) (only Supreme Court cases can be foundation for finding that the Illinois Supreme Court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"). Because Barrow has failed to establish that these evidentiary rulings are of a constitutional magnitude, the Court cannot review these claims.

## H.    Prosecutorial Misconduct

Barrow claims that the prosecution engaged in a pattern of misconduct based on the prosecution's remarks during *voir dire* and closing arguments.[5] In evaluating prosecutorial misconduct, "[t]he relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (citation and quotations omitted).

In evaluating Barrow's claim, the Illinois Supreme Court on direct appeal noted that the

---

[5] Barrow also bases his prosecutorial misconduct claim on three of his other habeas claims, namely: (1) the State suborned perjured testimony; (2) the prosecution made frequent references to other crimes evidence; and (3) the prosecution introduced improper, unreliable, and irrelevant evidence at trial. Based on the Court's conclusion that these claims are without merit, Barrow's reliance on them as a basis for his prosecutorial misconduct claim is misplaced.

prosecution told the jurors during *voir dire* and closing argument that the prosecution did not have to prove the defendant's guilt "beyond all doubt" or "beyond a shadow of a doubt." The court rejected the defendant's argument that these statements denied him a fair trial because the trial court properly instructed the jury on reasonable doubt. The court, citing *People v. Edwards*, 55 Ill.2d 25 (1973), found that "it must be presumed that the jurors followed the court's instructions, [and] any error occasioned by the prosecutor's remarks would have been cured by the jury instruction. *Barrow I*, 133 Ill.2d at 265-66 (internal citations omitted).

Although the Illinois Supreme Court relied on Illinois case law regarding prosecutorial misconduct and its relation to a defendant's right to a fair trial, under the AEDPA, the Illinois Supreme Court is not required to cite United States Supreme Court cases or even be aware of such law, as long as neither the reasoning nor the result of the state court decision contradicts clearly established Supreme Court precedent. *See Early v. Packer*, 123 S.Ct. 362, 365 (2002). Here, the Illinois Supreme Court's conclusion that Barrow was not denied a fair trial is consistent with the Supreme Court's decision in *Darden*. *See id.* at 181 (relevant question is whether prosecutor's comments infected trial with unfairness making conviction denial of due process). This conclusion is an objectively reasonable under Section 2254(d)(1). *See Andrade*, 123 S.Ct. at 1174.

Barrow also bases his prosecutorial misconduct on the following: (1) the prosecution mislead the jurors into believing that Wrona's prior felony convictions did not reflect on his credibility; (2) the prosecution made remarks at the opening statement and closing argument that the State's case was uncontradicted; and (3) the prosecution's opening statements improperly drew attention to the fact that the victim was a widower and had raised three children. The

Illinois Supreme Court, however, rejected these arguments based on waiver. *See Barrow I,* 133 Ill.2d at 267-268, 272. Because waiver is an independent and adequate state court ground in Illinois, *see Wright,* 288 F.3d at 947, this claim is procedurally defaulted. *See Harris,* 489 U.S. at 263. Barrow has not presented any argument to overcome this procedural hurdle, and thus is barred from raising these claims. *See Coleman,* 501 U.S. at 750.

### I. Denial Of Impartial Judge

Barrow contends that he was denied his constitutional right to a fair trial before an impartial tribunal because the trial judge improperly told panels of prospective jurors that they would decide on whether the death penalty should be imposed and advised the jury regarding the credibility of witnesses. It is undisputed that a criminal defendant has a constitutional right to be tried by a fair and unbiased tribunal. *See Bracy v. Gramley,* 520 U.S. 899, 904-05 (1997). Because judges are presumed to be impartial, however, Barrow must demonstrate judicial prejudice with specific facts in order to rebut this presumption. *See id.* at 909.

Barrow first argues that the trial judge's remarks during jury selection reflected that the judge thought the jury would find Barrow guilty, and consequently a death penalty hearing would ensue. The Illinois Supreme Court noted, however, that the trial judge instructed the jury that Barrow was presumed innocent and that they were to determine guilt or innocence. *See Barrow I,* 133 Ill.2d at 259. Based on the curative jury instruction, the Illinois Supreme Court concluded that these remarks did not deny Barrow a fair trial. *See id.*

Barrow only argues that "it is clear that the Petitioner was not tried and sentenced before an impartial tribunal" based on the trial judge's actions in the aggregate. Because Barrow has not presented specific facts in support of his claim, his argument is insufficient to overcome the

presumption that the trial judge was unbiased. *See Bracy*, 520 U.S. at 909. Furthermore, Barrow fails to argue how the Illinois Supreme Court's decision was an objectively unreasonable application or "contrary to" clearly established Supreme Court precedent as required under the AEDPA. *See* 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 404-05. Habeas relief based on Barrow's impartial judge claim is therefore denied. *See Woodford*, 537 U.S. at 24-25 (habeas petitioner's burden is to show state court applied facts of case in objectively unreasonable manner).

Barrow next argues that the trial judge improperly misled the jurors that Wrona's prior convictions did not reflect on his credibility. The Illinois Supreme Court held that Barrow waived this claim. *See Barrow I*, 133 Ill.2d at 267. Because Barrow does not argue cause and prejudice or that a fundamental miscarriage of justice will occur if the Court does not consider this claim, the Court is barred from collaterally reviewing it. *See Coleman*, 501 U.S. at 750.

### J. Denial Of Impartial Jury

After two days of trial testimony, a local newspaper published an article indicating that plea negotiations were taking place in Barrow's case. Barrow claims that the trial court denied his constitutional right to an impartial jury when it failed to poll the jury regarding the impact of that article.

At the state level, Barrow argued that the trial court abused its discretion in refusing to read the newspaper article and poll the jurors to determine if any had read it or been prejudiced by its contents. *See Barrow I*, 133 Ill.2d at 262-63. In reviewing this claim, the Illinois Supreme Court articulated the standard for the trial court's potential abuse of discretion, stating that only if the court determines that the publicity is prejudicial, is the court required to poll the jury

32

regarding a newspaper article. *Id.* at 263. The Illinois Supreme Court noted that Barrow failed to present the article to the Court and therefore precluded it from evaluating any prejudicial effect. The Illinois Supreme Court further noted "that the unsworn statement of defense counsel as to the contents of allegedly prejudicial newspaper articles is an insufficient foundation to show prejudice." *Id.* at 264. Furthermore, the court stated:

> Moreover, any attempt to have questioned the jurors to ascertain whether they had read the article would have disclosed the fact there was an article to the entire jury. This is particularly significant in light of counsel's arguing to the court that the content of the article was so prejudicial that if any of the jurors had read the article, a mistrial would be warranted.

*Id.* (internal citations omitted). Consequently, the Illinois Supreme Court concluded that even if the jurors has read the article, the contents were not so prejudicial as to deny Barrow a fair trial. *See id.* That decision is consistent with the facts and circumstances of this case, *see Schultz,* 313 F.3d at 1015, and in accordance with Supreme Court precedent.

Barrow argues that "[g]iven the relatively small size of the community where the case was tried and the likelihood that jurors reading the newspaper would have read this particular newspaper, it was incumbent upon the trial judge to at least poll the jury, as requested." Due process, however, does not require a new trial every time jurors are potentially compromised because it is impossible to shield jurors from every contact that might affect their decision. *See Smith v. Phillips,* 455 U.S. 209, 217 (1982); *see also Irvin v. Dowd,* 366 U.S. 717, 722 (1961) (impartiality does not mean that the jurors must be completely ignorant of all issues and events). Barrow's argument that there was a likelihood that the jurors may have read the newspaper and that reading it prejudiced the jurors is speculative, at best. *See Whitehead,* 263 F.3d at 722 (fact that jury was exposed to something that could theoretically affect its vote not sufficient to require

33

new trial). Barrow must present more than the speculative argument that the jurors may have read the newspaper. Instead, he must provide evidence that the jury was subjected to influences by outside sources. *See United States v. Davis*, 15 F.3d 1393, 1412 (7th Cir. 1994); *see also Whitehead*, 263 F.3d at 722 (defendant must make adequate showing of an extrinsic influence to overcome the presumption of jury's impartiality). He has failed to meet this burden.

Barrow also has failed to demonstrate that the Illinois Supreme Court's decision was an unreasonable application of Supreme Court precedent given the evidence presented during the state court proceedings. *See Warren*, 223 F.3d at 456-57. Therefore, the Court denies Barrow's impartial jury claim.

### K.    Inadmissible Eavesdropping Evidence

Barrow contends that he was denied his constitutional right to due process and equal protection because the trial court improperly admitted evidence obtained through eavesdropping equipment in violation of Illinois law. Barrow argues that because there was no judicial authorization to use the eavesdropping equipment, this evidence was inadmissible under Illinois statute, 720 ILCS 5/14-2. The Illinois Supreme Court concluded, however, that because the eavesdropping occurred in Maryland there was no violation of Illinois law. *See Barrow I*, 133 Ill.2d at 257.

Barrow did not present a constitutional claim regarding eavesdropping to the Illinois Supreme Court nor does he claim one here. Instead, Barrow frames his argument as such: "The question in this case is not whether the Illinois courts may apply their own law to the validity of a search in another state but whether Illinois courts could ignore Illinois law to apply the law of another state where the forum for the case is Illinois." Barrow admits that there is no relevant

34

United States Supreme Court precedent on this point.

Because there is no clearly established Supreme Court precedent, Barrow's claim cannot serve as the basis for a finding that the Illinois Supreme Court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1); *Young v. Walls*, 311 F.3d at 849. Therefore, Barrow's eavesdropping claim is denied.

**L.     Fitness Hearing**

Barrow asserts that he was denied his constitutional right to due process because the trial court did not conduct a fitness hearing even though he was taking psychotropic drugs at the time of the proceedings. The Illinois Supreme Court concluded that Barrow waived this argument because he did not present it until his second *pro se* post-conviction petition. Nevertheless, the Illinois Supreme Court addressed the merits. Based on the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq.*, the Illinois court concluded that this claim was not cognizable on post-conviction review because it was a statutory, not constitutional claim. *See Barrow II*, 195 Ill.2d at 538-39; *see also People v. Griffin*, 178 Ill.2d 65, 72-73 (1997) (Illinois post-conviction act allows for inquiry into constitutional issues that were not and could not have been determined on direct appeal).

Barrow's habeas claim is not cognizable on collateral review because the Illinois Supreme Court applied state law under the Illinois Post-Conviction Hearing Act. *See Estelle*, 502 U.S. at 67-68; *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("federal habeas corpus relief does not lie for errors of state law"). This Court cannot review errors of state law unless they resulted in the deprivation of a constitutional right. *See Mahaffey*, 294 F.3d at 914. Because

35

Barrow has not established a deprivation of a constitutional right under these circumstances, this claim fails.

## M.    Ineffective Assistance Of Counsel Claims[6]

Barrow argues that he received constitutionally ineffective assistance of pretrial, trial, and appellate counsel. To render constitutionally effective assistance of counsel under the Sixth Amendment, counsel's performance must satisfy the familiar two-prong standard as set forth in *Strickland v. Washington*, 466 U.S. 668, 687-91 (1984). Under the performance *Strickland* prong, Barrow must show that his counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88 (measure of attorney performance is reasonableness under prevailing professional norms). A "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (citation and quotations omitted).

Under the prejudice *Strickland* prong, Barrow must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Gibbs v. VanNatta,* 329 F.3d 582, 584 (7th Cir. 2003) ("defendant must show effective assistance would have given him a reasonable shot at acquittal"). If a defendant fails to make a proper showing under one of the *Strickland* prongs, the

---

[6] In his opening memorandum to the Court, Barrow argues that the Illinois Supreme Court's application of *Strickland v. Washington,* 466 U.S. 668 (1984) was unreasonable under 28 U.S.C. § 2254(d)(1). In his reply brief, Barrow contends, without explanation, that the Illinois Supreme Court's decision was also "contrary to" *Strickland* under Section 2254(d)(1). Because Barrow raises for the first time in his reply brief, he has waived it. *See Fenster v. Tepfer & Spitz, Ltd.,* 301 F.3d 851, 859 (7th Cir. 2002).

court need not decide the remaining prong. *See Strickland,* 466 U.S. at 697; *Berkey v. United States,* 318 F.3d 768, 772 (7th Cir. 2003).

### 1.    Ineffective Assistance of Pretrial Counsel

Barrow's first ineffective assistance of counsel claim is based on his assertion that defense counsel, Wayne McFarland, failed to conduct any pretrial investigation after co-counsel, Daniel Bute, was removed from the case one week before the trial started. Specifically, Barrow argues that McFarland failed to: (1) investigate the criminal background of the key prosecution witness, Harold "Smokey" Wrona, including asking for further discovery on pending charges; (2) contact court-appointed experts; (3) issue subpoenas for the production of the police officers' street files; (4) request a fitness hearing; and (5) edit irrelevant portions of the recorded conversation between Barrow and Wrona.

### a.    Wrona's Criminal Background, Experts, & Street Files[7]

The post-conviction Illinois Supreme Court concluded that Barrow waived his first three ineffective assistance of pretrial counsel claims because he failed to raise them on direct appeal. *See Barrow II,* 195 Ill.2d at 522-24. Because waiver is an independent and adequate state ground, *see Wright,* 288 F.3d at 947, Barrow has procedurally defaulted these claims. *See Harris,* 489 U.S. at 263. Outside of his failed actual innocence claim, Barrow makes no attempt

---

[7] In support of his claim that trial counsel failed to properly investigate Wrona's criminal background, Barrow filed a "Supplementary Memorandum" [R. 47] arguing that the recent United States Supreme Court decision in *Wiggins v. Smith,* 123 S.Ct. 2527 (2003) supports his claim. In *Wiggins,* the Supreme Court held that counsel's performance was deficient under *Strickland* because counsel failed to investigate powerful mitigation evidence in the context of the petitioner's capital sentencing hearing. *See Wiggins,* 123 S.Ct. at 2541. Barrow brings his claim in a different context than the mitigation phase of a capital sentencing hearing and, as the Court discussed above, any claim based on Barrow's former death sentence is moot. Furthermore, because Barrow has procedurally defaulted this claim, the Court need not examine whether the *Wiggins* decision applies to the merits of his claim.

to overcome this default. *See Coleman,* 501 U.S. at 750 (petitioner must show cause and prejudice, or that a fundamental miscarriage of justice would occur if court did not consider defaulted claims). Therefore, the Court is barred from reviewing these first three ineffective assistance of counsel claims.

### b.    Fitness Hearing

Barrow's next claim is that he was denied constitutionally effective assistance of counsel because his defense attorney did not request a fitness hearing under Illinois statute, 725 ILCS 5/104-21(1), despite counsel's knowledge that Barrow had taken a psychotropic drug daily.

When reviewing this claim, the post-conviction Illinois Supreme Court reasoned that although there was evidence that Barrow was taking medication for anxiety, headaches, and stomachaches, Barrow did not provide additional information to support the conclusion that "because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." *See Barrow II,* 195 Ill.2d at 539-40 (citing 725 ILCS 104-10). Accordingly, the Illinois Supreme Court determined that Barrow did not establish that there was a reasonable probability that he would have been found unfit had his counsel requested a fitness hearing. *See People v. Mitchell,* 189 Ill.2d 312, 334 (2000) (*Strickland* prejudice prong in context of counsel's failure to request fitness hearing is whether reasonable probability exists that, had court held fitness hearing, result of proceeding would have been that defendant found unfit to stand trial). The Illinois Supreme Court also concluded that Barrow was not prejudiced by counsel's failure to request a fitness hearing. *See Barrow II,* 195 Ill.2d at 540.

The Illinois Supreme Court reasonably applied *Strickland* in the context of this claim.

See *Eddmonds v. Peters III*, 93 F.3d 1307, 1316-17 (7th Cir. 1996) (inquiry is not whether there should have been a fitness hearing, but whether habeas petitioner was fit to stand trial). Accordingly, Barrow's ineffective assistance of counsel claim based on his counsel's failure to request a fitness hearing is denied.

### c.    Unredacted Tape

Barrow's last pretrial claim is that counsel was ineffective for failing to edit portions of his recorded conversation with Wrona, especially in light of the Illinois Supreme Court's comments that portions of the tape were irrelevant and prejudicial. *See Barrow I*, 133 Ill.2d at 258 ("we agree with the defendant that portions of the conversation stray into areas that are irrelevant and prejudicial"). The unredacted tape revealed not only the circumstances surrounding O'Berto's murder, but details about an incident where two prostitutes robbed Barrow and his brother. *See id.* The Illinois Supreme Court concluded that this section of their conversation was relevant to corroborate Barrow's statements that placed Barrow and his brother in Cedar Point, Illinois, at the time of O'Berto's murder. *See id.* at 258-59. In addition, the tape contained statements concerning Barrow's excessive drinking and an armed robbery conviction. *See id.* at 259. The Illinois Supreme Court concluded that because it was impossible to excise these statements without destroying the tape's meaning and that the irrelevant evidence was not prejudicial, Barrow was not denied constitutionally effective assistance of counsel. *See id.*

Barrow argues that the Illinois Supreme Court's analysis was an unreasonable application of *Strickland* because the court jumped to the *Strickland* prejudice analysis before considering whether counsel's performance was deficient. It is well-established, however, that petitioners must satisfy both *Strickland* prongs and that courts need not consider the performance prong if

39

the court finds that counsel's performance did not prejudice the petitioner. *See Strickland*, 466 U.S. at 697; *see also Berkey*, 318 F.3d at 772. As such, this argument is without merit.

Barrow gives no further explanation as to why the Illinois Supreme Court's decision was an unreasonable application of *Strickland*. The *Strickland* inquiry is a balancing test rather than a bright-line rule. Therefore, only clear error in applying *Strickland* supports a writ of habeas corpus. *See Holman v. Gilmore*, 126 F.3d 876, 882 (7th Cir. 1997). Based on this precedent and the facts of this case, the Illinois Supreme Court did not err in applying the *Strickland* prejudice prong first. The Court denies Petitioner's writ of habeas corpus based on this claim.

### 2. Ineffective Assistance of Trial Counsel

Next, Barrow claims that his trial attorney was constitutionally ineffective because counsel: (1) failed to present a defense; (2) commented in opening statements that Barrow was not guilty, but rested without presenting a defense; (3) stated in his opening that the prosecution was convinced of Barrow's guilt; (4) lead the jury to believe that Wrona was credible; (5) failed to object to the trial judge's comments regarding the death penalty during *voir dire*; (6) failed to meaningfully challenge the State's witnesses on cross-examination; (7) failed to capitalize on the State's lack of evidence; (8) withdrew his request for an Illinois Pattern Jury Instruction on the credibility of convicted felons; and (9) failed to object to improper remarks made by the prosecution in closing arguments.

### a. Failure to Present a Defense

Barrow claims that his attorney's decision not to present a defense constituted ineffective assistance of counsel. On direct appeal, the Illinois Supreme Court, applying *Strickland*, concluded that trial counsel's advice was sound trial strategy and that Barrow had not overcome

this presumption. *See Barrow I*, 133 Ill.2d at 247. Barrow asserted that counsel advised him not to present a defense solely to preserve for appellate review the trial court's denial of Barrow's motion for a directed verdict. The Illinois Supreme Court concluded that the record did not support this assertion, especially in light of counsel's testimony on defendant's post-trial motion that he had extended discussions with Barrow concerning the evidence and potential witnesses they could present at trial. *See id.* at 248. Barrow suggested, for example, that they call his brother Bruce to testify. Because Bruce appeared to be "burnt out" on drugs and his potential testimony was not believable, counsel decided not to call him as a defense witness. *See id.*

In examining Barrow's claim, the Illinois Supreme Court found that "the record reflects a strategic decision on the part of defense counsel not to put on evidence that might have had little or no effect on the jury or that may have been harmful." *Id.* The court noted that in order to succeed on an ineffective assistance of counsel claim based on the failure to call a particular witness, a petitioner must demonstrate that such trial strategy was unsound. The Illinois court found that counsel's advise to forgo putting on evidence did not fall below an objective standard of reasonableness. *Id.* (internal citations omitted). The Illinois Supreme Court further concluded based on the overwhelming evidence of Barrow's guilt that "assuming counsel's advice was not warranted as a matter of sound strategy, we do not consider that there is a reasonable probability that had the defendant presented the evidence or testimony he now suggests the outcome of the proceeding would have been different." *Id.* at 248-49.

The Illinois Supreme Court reasonably applied *Strickland* to the facts and circumstances of this case. *See Schultz*, 313 F.3d at 1015. Under *Strickland*, a court's review of counsel's performance is highly deferential because there is a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance. *See Strickland,* 466 U.S. 689; *Hough v. Anderson,* 272 F.3d 878, 890 (7th Cir. 2001). Here, the Illinois Supreme Court examined the record, including potential evidence that could have been presented, and concluded that counsel's decision not to put on evidence did not fall below an objective standard of reasonableness. *See Barrow I,* 133 Ill.2d at 248. Barrow, on the other hand, has not rebutted the presumption that counsel's actions were sound trial strategy. Furthermore, Barrow does not challenge the Illinois court's conclusion that he was not prejudiced under the *Strickland* framework, thereby, failing to satisfy both *Strickland* prongs. *See id.* at 697.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. Based on the Illinois Supreme Court's decision, this Court concludes that counsel's conduct did not lead to an unjust result.

### b.   Opening Statement Regarding Barrow's Innocence

On post-conviction appeal, Barrow argued that during McFarland's opening statement, counsel promised to show that Barrow was not guilty but then later rested without presenting a defense. Consequently, Barrow contended that his counsel's performance was constitutionally ineffective. The post-conviction Illinois Supreme Court concluded that this claim rephrased Barrow's argument based on counsel's failure to present a defense, and thus, was barred by the doctrine of *res judicata*. *See Barrow II,* 195 Ill.2d at 522.

Because the Illinois Supreme Court did not consider this claim waived but barred by *res judicata*, this Court can collaterally review it. *See Patrasso,* 121 F.3d at 302. Barrow argues that counsel's performance was deficient. He fails, however, to argue or establish that counsel's

42

performance prejudiced the outcome of his case. *See Gibbs v. VanNatta*, 329 F.3d 582, 584 (7th

Cir. 2003) ("defendant must show effective assistance would have given him a reasonable shot at

acquittal"). It is not the Court's duty to construct Barrow's prejudice argument. *See Doherty v.

City of Chicago,* 75 F.3d 318, 324 (7th Cir. 1996) (court has no duty to construct a litigant's legal

arguments, especially when the party is represented by counsel). Therefore, this claim is without

merit because Barrow has failed to satisfy both *Strickland* prongs. *See id.* at 697.

### c.    Prosecution's Belief of Barrow's Guilt and Wrona's Credibility

As to the third and fourth bases for Barrow's ineffective assistance of trial counsel claim,

the Illinois Supreme Court concluded that because Barrow could have raised these claims on

direct appeal, but did not, the claims were waived. *See Barrow II*, 195 Ill.2d at 522, 524.

Because waiver is an independent and adequate state ground under Illinois law, *see Wright*, 288

F.3d at 947, the Court cannot review these claims absent a showing of cause and prejudice, or

that a miscarriage of justice would occur. *See Coleman*, 501 F.3d at 750. Barrow has made no

attempt to overcome this procedural default, and thus, this Court cannot review the merits of

these claims.

### d.    Trial Judge's Comments During Jury Selection

Barrow contends that because his trial counsel did not object to the trial judge's

comments made to prospective jurors regarding the death penalty, counsel was constitutionally

ineffective. Barrow, however, makes no legal argument in support of this claim. Furthermore,

the Court has already explained that the Illinois Supreme Court reasonably applied clearly

established Supreme Court precedent in concluding that Barrow's underlying impartial judge

claim was without merit. The Illinois Supreme Court concluded that the trial judge's remarks were not so prejudicial as to deny Barrow a fair trial. *See Barrow I*, 133 Ill.2d at 260. Accordingly, whether or not counsel objected to the judge's remarks is of no consequence because the Illinois Supreme Court found no prejudice. *See Strickland*, 466 U.S. at 694 (but for counsel's unprofessional error, there is a reasonable probability that the result of trial would have been different). This claim also fails.

e.    **Failure to Adequately Cross-examine State's Witnesses**

Barrow claims that counsel failed to meaningfully challenge the State's witnesses on cross-examination. Specifically, Barrow argues that counsel did not adequately cross-examine the state expert's testimony regarding fingerprint evidence, the ballistic expert's weapon testimony, and a police officer's testimony regarding an armed robbery. Barrow, however, never brought these bases for his ineffective assistance of counsel claim to the Illinois courts. Because Barrow did not give the Illinois courts the opportunity to review these claims, they are procedurally defaulted. *See Boerckel*, 526 U.S. at 845. Further, Barrow has not provided any explanation why he failed to argue these claims to the Illinois courts, *see Coleman*, 501 U.S. at 750, therefore, the Court is barred from reviewing them.

Last, as in his post-conviction brief, Barrow argues that counsel did not properly object to the prosecution leading Judy Herron into testifying about impermissible evidence. This alleged error, standing alone, does not support a claim that counsel's performance was constitutionally inadequate, especially because Barrow failed to argue prejudice resulting from this alleged error. *See Strickland*, 466 U.S. at 694.

### f. Failure to Capitalize on State's Lack of Evidence

Barrow contends that his trial counsel was ineffective because counsel failed to capitalize on the State's lack of evidence. He argues, for example, that although there was only one piece of physical evidence – a foot impression – that linked him to the scene of the murder, counsel did not object to the State's chain of custody regarding that impression. Barrow, however, never presented this argument to the Illinois courts. *See Boerckel*, 526 U.S. at 848 (petitioner's failure to present constitutional claim to highest state court to which it may be appealed, in the manner required by state law, results in a procedural default preventing federal habeas court from deciding it on collateral review). Barrow has not presented any argument to overcome this procedural default. *See Coleman*, 501 U.S. at 750. Therefore, the Court cannot review this claim.

### g. Jury Instruction and State's Closing Remarks

Barrow claims that trial counsel was constitutionally ineffective for withdrawing his request for an Illinois Pattern Jury Instruction on the credibility of convicted felons and for failing to object to the prosecution's remarks during closing arguments. Barrow fully and fairly presented both of these arguments to the Illinois Supreme Court, *see Chambers*, 264 F.3d at 737-38, yet the Illinois Supreme Court did not address these claims. Therefore, this Court reviews them under the general standard set forth in Section 2243. *See Braun*, 227 F.3d at 917 (court to dispose of matter as law and justice require).

Barrow makes no cogent argument regarding why his counsel was ineffective for withdrawing the credibility jury instruction. In support of his claim based on the prosecution's remarks during closing argument, Barrow points to his habeas claims regarding other crimes and

irrelevant evidence and prosecutorial misconduct. As discussed above, these claims lack merit.

Even if counsel's performance were deficient, Barrow has not argued that he was prejudiced by these alleged errors. *See Strickland*, 466 U.S. at 694 (but for counsel's unprofessional error, there is a reasonable probability that the result of trial would have been different). As the Illinois Supreme Court reasoned in the context of Barrow's other ineffective assistance claims, the overwhelming evidence of Barrow's guilt also supports the conclusion that any such alleged errors did not prejudice Barrow. *See, e.g., Barrow I*, 133 Ill.2d at 248-49 (ineffective assistance of counsel claim based on failure to present defense); *Barrow II*, 195 Ill.2d at 523-24 (ineffective appellate counsel claims).

Only clear error in applying *Strickland* can support a writ of habeas corpus. *See Holman*, 126 F.3d at 882. The Illinois court did not err in its application of *Strickland*. As such, under the general standard as set forth in 28 U.S.C. § 2243, these ineffective assistance claims are without merit.

### h. Cumulative Effect of Trial Counsel's Errors

Barrow claims that the cumulative effect of trial counsel's errors violated his right to effective assistance of counsel under *Strickland*. A habeas petitioner can establish ineffective assistance of counsel by showing that "the cumulative effect of counsel's individual acts or omissions was substantial enough to meet *Strickland's* test." *Williams v. Washington*, 59 F.3d 673, 682 (7th Cir. 1995); *see also Hough*, 272 F.3d at 891 n.3 (prejudice under *Strickland* can be based on cumulative effect of multiple errors).

Because Barrow's ineffective assistance of pretrial and trial counsel claims were either procedurally defaulted or without merit, there are no multiple errors to accumulate. *See Hough*,

46

272 F.3d at 891 n.3. Therefore, Barrow's claim fails.

### 3.    Ineffective Assistance of Appellate Counsel

Next, Barrow contends that his appellate counsel failed to raise meritorious claims in his direct appeal to the Illinois Supreme Court. Basically, Barrow argues that his appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel claims. Barrow articulates five claims that appellate counsel failed to bring, including: (1) trial counsel's failure to conduct a proper pretrial investigation; (2) trial counsel's failure to properly cross-examine Wrona; (3) trial counsel's failure to cross-examine other State witnesses; (4) trial counsel's advice to the jury that credibility was not at issue; and (5) trial counsel's failure to tender credibility jury instructions. Barrow then argues that these issues were raised in his post-conviction brief, but the Illinois Supreme Court did not address them.

First, the Illinois Supreme Court did address Barrow's appellate counsel claims based on counsel's pretrial investigation, counsel's failure to properly cross-examine Wrona, and trial counsel's statements regarding witness credibility. The post-conviction Illinois Supreme Court concluded that Barrow was not prejudiced by these alleged errors. *See Barrow II*, 195 Ill.2d at 522-24. It reasoned that based on the overwhelming evidence of Barrow's guilt, even if his appellate counsel had raised these issues on direct appeal, there was no reasonable probability that the result of the appeal would have been any different. *See id.* at 523-24; *see also Lee*, 328 F.3d at 901 (there must be a reasonable probability that the issue not raised would have altered the outcome of the appeal had it been raised).

The Illinois Supreme Court reasonably applied *Strickland* to the facts and circumstances regarding these appellate counsel claims. *See Schultz*, 313 F.3d at 1015. As the Illinois court

47

observed, appellate counsel is not obligated to brief every possible issue on appeal. *See Barrow II*, 195 Ill.2d at 522-23; *see also Howard v. Gramley,* 225 F.3d 784, 791 (7th Cir. 2000) ("appellate lawyers are clearly not incompetent when they refuse to follow a 'kitchen sink' approach to the issues on appeals"). Barrow makes no attempt to establish that the Illinois court would have reversed his conviction or ordered a new trial based on these claims. *See Lee*, 323 F.3d at 901. Indeed, the Illinois court's reasoning that Barrow was not prejudiced by counsel's failure to raise these claims is one of several plausible outcomes. *See Searcy*, 332 F.3d at 1089. Because Barrow fails to demonstrate that the Illinois Supreme Court's decision was unreasonable under Section 2254(d)(1), *see Woodford,* 537 U.S. at 24-25, the Court denies these claims.

Second, Barrow did not fully and fairly present his argument that appellate counsel failed to bring claims based on trial counsel's failure to cross-examine other State witnesses and tender credibility jury instruction to the Illinois courts. *See Boerckel*, 526 U.S. at 848 (habeas petitioner must give state court full and fair opportunity to resolve federal constitutional claims before claim presented to federal habeas court). In addition, Barrow does not argue cause and prejudice or that the miscarriage of justice exception applies. *See Coleman,* 501 U.S. at 750. As such, this Court is barred from reviewing these procedurally defaulted claims.

Finally, Barrow contends that his appellate counsel was constitutionally ineffective because he failed to argue that Barrow was denied his right to counsel of his choice. Once again, Barrow did not bring this claim to the Illinois courts before presenting it in his habeas petition. *See Chambers,* 264 F.3d at 737-38 (full and fair presentment requires presentation of both the operative facts and controlling legal principles). Barrow does not argue cause and prejudice or the fundamental miscarriage of justice exception to overcome this procedural default. *See*

*Coleman*, 501 U.S. at 750. Therefore, the Court is barred from reviewing this last appellate counsel claim.

### N.     Cumulative Effect Claim

Barrow asserts that the cumulative effect of the constitutional violations as set forth in his federal habeas petition deprived him of his constitutional right to a fundamentally fair state court proceeding. It is well-established that trial errors that are harmless standing alone may cumulatively amount to a denial of his constitutional right to due process of law. *See Alvarez v. Boyd,* 225 F.3d 820, 824 (7th Cir. 2000); *see also United States v. Santos,* 201 F.3d 953, 965 (7th Cir. 2000) (cumulative effect of trial errors may deprive defendant of constitutional right to a fair trial). In order to establish a constitutional deprivation under these circumstances, Barrow must show that: (1) at least two trial errors were committed during the course of the trial; and (2) the multiple errors denied him a fundamentally fair trial. *See Alvarez,* 225 F.3d at 824. Barrow has not met either element.

First, Barrow does not have two trial errors to accumulate because he procedurally defaulted any such errors and the Illinois Supreme Court's decisions were not an unreasonable application of or contrary to clearly established Supreme Court precedent. *See Alvarez,* 225 F.3d at 825. Second, Barrow makes no attempt to establish how any of these alleged trial errors denied him a fundamentally fair trial. *See, e.g., Anderson v. Sternes,* 243 F.3d 1049, 1055-56 (7th Cir. 2001) (habeas petitioner cannot turn unrelated evidentiary errors into a denial of due process right to fundamental fairness). Barrow, therefore, has not made the requisite showing to establish a constitutional violation, and thus his cumulative effect claim fails.

49

**O.      Request For An Evidentiary Hearing**

Finally, Barrow requests an evidentiary hearing under Section 2254(e)(2) to establish that his counsel's representation was prejudicial and to develop the record regarding his actual innocence claim. Federal habeas courts are not an alternative forum for trying issues and facts that a habeas petitioner did not pursue at the state court level. *See Williams,* 529 U.S. at 437; *Boyko v. Parke*, 259 F.3d 781, 789-90 (7th Cir. 2001) (federal habeas court's ability to hold evidentiary hearing for petitioner to supplement an underdeveloped state court record is "severely circumscribed"). Section 2254(e)(2) provides that, if a factual basis of a claim was not developed in the state court, the federal habeas court "shall not hold an evidentiary hearing" unless the habeas petitioner can show:

> (A) the claim relies on –
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; *or*
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; *and*
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (emphasis added).

In support of his request for an evidentiary hearing regarding his ineffective assistance of counsel claims, Barrow merely states: "In a case such as this one, where no defense was presented, the court should take the testimony of defense counsel and the alibi witnesses, at the very least to determine whether the representation was prejudicial." Barrow has not identified

the alibi witnesses or any description of their potential testimony. Also, Barrow does not explain what facts his trial counsel's testimony will uncover. In support of his actual innocence claim, Barrow offers David Lee and Cheri Stevenson's testimony in addition to their affidavits which aver that Wrona lied on the witness stand. Barrow, however, does not explain how the Stevensons' testimony would differ from their affidavits or how it would further develop his actual innocence claim.

Under Section 2254(e)(2)(B), Barrow must establish that the facts underlying his claims would be sufficient to establish by clear and convincing evidence that, but for the constitutional error, no reasonable fact finder would find him guilty of the underlying offense. *See Harris v. McAdory,* 334 F.3d 665, 669-70 (7th Cir. 2003). Barrow has failed to argue any facts that satisfy this strict standard. Therefore, an evidentiary hearing is unwarranted. Accordingly, the Court need not address whether Barrow's failure to develop the factual record resulted from his lack of due diligence in the first instance. *See* § 2254(e)(2)(A)(ii); *Williams,* 529 U.S. at 429-30.

## CONCLUSION

For the reasons stated above, the Court denies Barrow's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [R. 11]. This case is terminated.

**Date**: August 11, 2003                    **ENTERED**:


AMY J. ST. EVE
United States District Court Judge